# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### ARREST ON OUT-OF-DISTRICT OFFENSE

Magistrate Case Number: **08 MJ 1797**

The person charged as _COREY ALMEIDA_ now appears before this United States District Court for an initial appearance as a result of the following charges having been filed in the United States District Court for the ___—___ District of _MASSACHUSETTS_ with _CONSPIRACY TO POSSESS W/ INTENT TO DISTRIBUTE COCAINE BASE_, in violation of _TITLE 21 USC SECT. 846_.

The charging documents and the warrant of the arrest of the defendant which was issued by the above United States District Court are attached hereto.

I hereby swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

DATED: _6/10/2008_.

_Susan L Ellis_
(Name) _SUSAN L ELLIS_
(Title) _SPECIAL AGENT_
(Agency) _FBI - SAN DIEGO_

Reviewed and Approved:

Dated: _June 10, 2008_.

_Tara Hingley_
Assistant United States Attorney

1AO 91 (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT

_____ DISTRICT OF MASSACHUSETTS _____

UNITED STATES OF AMERICA

v.

COREY ALMEIDA

**CRIMINAL COMPLAINT**

M.J. No.: 08-58-LTS

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about **November 14, 2007** in **Bristol County,** and elsewhere, in the District of **Massachusetts**, the defendant did knowingly and intentionally combine, conspire, confederate and agree with persons, to possess with intent to distribute, and to distribute, cocaine, a Schedule II controlled substance, in violation of

**21** United States Code, Section(s) **846**. I further state that I am an **F.B.I. Task Force Agent** and that this complaint is based on the following facts:

**Please see attached Affidavit of F.B.I. Task Force Agent Kurt Dreher**

Continued on the attached sheet and made a part hereof:   [x] Yes   [ ] No

_____
Signature of Complainant
F.B.I. Task Agent Officer Kurt Dreher

Sworn to before me and subscribed in my presence,

**May 28, 2007**                    at    Boston, Massachusetts
Date                                      City and State

**LEO T. SOROKIN**
**United States Magistrate Judge**                 _____
Name and Title of Judicial Officer                 Signature of Judicial Officer

O8mj58.LTS

## AFFIDAVIT OF KURT DREHER

Kurt Dreher, a Task Force Agent ("TFA") with the Federal Bureau of Investigation ("FBI") Gang Task Force, being duly sworn, deposes and states as follows:

1. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code: that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 878, Title 21, United States Code. I have been employed as a police officer with the City of New Bedford ("NBPD"), Massachusetts since 1994. I have been assigned to the Federal Bureau of Investigation's Gang Task Force in New Bedford since October, 2006.

2. During my employment with the NBPD, I have previously been assigned to the narcotics unit for approximately three and one-half years. As a result, I have participated in numerous investigations relating to the distribution of controlled substances, including heroin, cocaine, cocaine base, also known as "crack cocaine" and other substances in violation of Massachusetts General Law 94C. I have also conducted investigations, through my assignment to the FBI Gang Task Force, relating to the distribution of

cocaine base, also known as "crack cocaine" in violation of the federal anti-drug laws. I have received training in the field of narcotics enforcement and investigations conducted by the Drug Enforcement Agency ("DEA"). I am familiar with the habits, methods, routines, practices and procedures commonly employed by persons engaged in the trafficking of illegal drugs. Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, and with the methods of payment for such drugs.

3. I submit this affidavit in support of an application for a criminal complaint charging **COREY ALMEIDA** ("**ALMEIDA**") with knowingly and intentionally combining, conspiring, confederating and agreeing with persons to possess with intent to distribute, and to distribute, cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846. This affidavit is submitted for the limited purpose of establishing probable cause to believe that **ALMEIDA** committed the above described offense. Accordingly, I have not included each and every fact known to myself and other law enforcement officers involved in this investigation.

4. As a result of my personal participation in the investigation, interviews with and analysis of reports

submitted by other law enforcement personnel and my consultations with other law enforcement officers, I am familiar with this investigation.

5. In the Fall of 2007, I conducted an investigation into the drug dealing activities of **COREY ALMEIDA ("ALMEIDA")**. **ALMEIDA** is known to me from prior drug investigations. Two confidential informants provided information that indicated that **ALMEIDA** was the leader of a large scale drug trafficking operation that supplied drugs to the Montes Park and United Front housing complexes. Both of these areas are also the territory of street gangs that control the area and sell narcotics to support their enterprises. One of the confidential informants also provided that **ALMEIDA** has a source of supply for the narcotics that he distributed in nearby Providence, R.I.

6. On November 14, 2007, at about 6:00 p.m., I was working in an undercover capacity conducting surveillance of 57-59 Willow Street, New Bedford. At approximately 6:30 p.m., I observed a blue Ford Explorer bearing Massachusetts registration 24ZZ63 exit the driveway of the residence. This vehicle is known to me to be operated by **COREY ALMEIDA**, and is registered to **ALMEIDA's** girlfriend. I conducted surveillance of this vehicle as it drove from the residence directly to the

Route 195 West highway. I then contacted other Task Force Agents, Sergeant James Canty of the Massachusetts State Police and Officer Robert Jackson from Massachusetts State Parole to assist with surveillance.

7. The undersigned, along with the above listed assisting Task Force Agents, followed the blue Explorer into Providence, Rhode Island. The surveillance officers observed the vehicle exit the highway to an area on Gaspee Street near the Providence Place Mall, where it pulled over and parked. I established a surveillance point of the vehicle.

8. While conducting this surveillance, I observed **ALMEIDA**, meeting with another male (later identified as Leite). The two individuals spoke briefly and then walked away from the location towards the Providence Mall.

9. After approximately 45 minutes, I then observed a second Ford Explorer (green in color) pull up a few spaces behind the blue Ford Explorer. I observed **ALMEIDA** exit the vehicle and walk quickly over to blue Explorer carrying a light colored bag with thin strap handles. **ALMEIDA** opened the rear passenger door to the vehicle and placed the bag into the vehicle. **ALMEIDA** then got into the front passenger's seat of the car and after a few minutes got out and walked back to the vehicle that he had just exited. The vehicle then pulled away

from the location and drove back to the Providence Mall.

10. After approximately 20 minutes, I observed **ALMEIDA** and Leite return to **ALMEIDA's** blue Explorer. Upon arriving back at the vehicle I observed **ALMEIDA** open the door to another vehicle parked in front of the Explorer, a Chrysler Sebring bearing MA registration 62PK83, and place a bag into it. **ALMEIDA** and Leite then walked to the driver's side of the two vehicles and both vehicle started up and pulled away from the curb.

11. Due to my surveillance point I was unable to tell which person (**ALMEIDA** or Leite) was driving the blue Explorer (that I frequently saw **ALMEIDA** driving) or the Chrysler Sebring.

12. Both vehicles proceeded directly to the highway, and traveled back into Massachusetts. At my request, Sergeant Canty stopped the blue Explorer and approached the driver who identified himself as Leite. I informed Sergeant Canty that there was an outstanding warrant for the arrest of Leite. Sergeant Canty confirmed that the arrest warrant was still active and arrested Leite on an outstanding arrest warrant. Upon speaking with Leite, Sergeant Canty observed a light colored bag on the rear seat similar in appearance to that which I had described to him earlier that I saw **ALMEIDA** place

5

into the vehicle.

13. Sergeant Canty patted Leite for weapons and asked if there was anything in the car he should know about, such as drugs or weapons. Leite replied "There's drugs". Sergeant Canty then looked into the bag and discovered that it contained packages containing two kilograms of suspected cocaine from the light colored bag on the back seat of the vehicle.

14. When officers determined that Leite was operating the blue Explorer (and not **ALMEIDA**), the officers believed that **ALMEIDA** was driving the Chrysler Sebring. I knew that **ALMEIDA** did not have a valid driver's license. At my request, Task Force Agents Troopers Marc Cyr and Jimi Grasso stopped the Chrysler Sebring. Trooper Grasso approached the operator and asked the operator for his licence and registration. The operator identified himself to him as **COREY ALMEIDA**. **ALMEIDA** informed Trooper Grasso that his license was suspended. **ALMEIDA** was removed from the vehicle and placed under arrest for this offense and placed into the rear of the State Police Cruiser. **ALMEIDA** was later charged with state narcotics violations.

15. Both **ALMEIDA** and Leite were transported to the State Police barracks for booking. At the barracks, I spoke with

Leite. I advised him of his Miranda rights from a Miranda rights waiver sheet. Leite stated he understood his rights and that he wished to speak with me. Leite then signed the Miranda rights waiver form.

16. The following is a synopsis of the interview of Leite:

Leite stated to me that this was his first time, and that he was just a driver. I asked what he meant and he stated that he knew that there were drugs in the bag in the car, but that he did not know how much, that his job was just to drive. He stated that **COREY (ALMEIDA)** had asked him if he wanted to do a "run" with him. He stated that he knew what doing a "run" meant and that he was friends with **COREY** from a long time ago, so he agreed to do it. I asked him if he was being paid and he stated that he was not, that he was just helping him out. Leite stated that he had been at **COREY's** house on Willow Street and that the two of them left the residence at the same time. Leite stated that he was driving the blue Explorer and that **COREY** had been driving the Chrysler Sebring the entire time. Leite stated that **COREY** pulled out of the driveway just prior to him and that they had both driven up the street to Shawmut Avenue.

17. Leite stated that he was supposed to follow **COREY** to

the location in Providence, but he almost immediately lost him in traffic. He stated that he drove to Providence and that **COREY** directed him to the location over the phone. Leite stated that he got somewhat lost, and that was why he was kind of driving in circles. Leite explained that he eventually arrived at the spot where **COREY** was and that he parked the Explorer right behind the Chrysler Sebring. Leite stated that he then walked with **COREY** to the Cheesecake Factory, they went inside. **COREY** immediately left and Leite just stayed at the table. Leite stated that **COREY** was gone for quite awhile and that upon his return they had the food placed into boxes to go and then left the restaurant.

18. I asked Leite if he saw who **COREY** met with (to get the drugs) and he stated that he had not. Leite again said that he was just there to drive, nothing else, that he had no idea who **ALMEIDA** met, or the quantity of drugs that **ALMEIDA** picked up. Leite stated that upon leaving the restaurant they walked directly back to the vehicles and that he got into the blue Explorer and **COREY** got into the Chrysler Sebring and they both drove away. I asked where he was supposed to be taking the drugs, to Willow Street or to Kempton Street. Leite indicated that **COREY** had told him that when they got back into New Bedford, he would tell him over the telephone which

location they were going to. (It should be noted that the time of their arrests **COREY ALMEIDA's** most recent call on the phone was to a party listed as Ozzie. Upon my calling this party, Leite's telephone rang. Leite's telephone also listed **ALMEIDA's** telephone number as "Work".) The interview of Leite then concluded.

19. The booking process was completed on Leite and **ALMEIDA**. A search of **ALMEIDA** revealed $3,559.00 in U.S. currency. The denominations were: $3500.00 in 100 dollar bills wrapped in an elastic in one pocket, and $59.00 in the other pocket. A search of Leite revealed $89.00 in U.S. currency. Cellular telephones were also seized from both individuals.

20. The substance was weighed at the police barracks and determined to have a gross weight in excess of 2 pounds. The results of chemical analysis and testing at the Department of State Police Crime Laboratory is that the substance is cocaine, with a net weight of 2002.2 grams.

21. It is my opinion that, based upon the circumstances of this case, including the drug weight, the packaging of the substance, the method of transport, the money recovered, as well as the lack of personal use items retrieved that this is consistent with the distribution of cocaine.

22. Based on the information contained in this affidavit, all of which is true and accurate to the best of my knowledge, information and belief, I believe that there is probable cause to believe that on November 14, 2007, **COREY ALMEIDA** did knowingly and intentionally conspire to possess with intent to distribute cocaine, a schedule II controlled substance, in violation of 21 U.S.C. § 846.

I, Kurt Dreher, having signed this Affidavit under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information and belief.

_____
Kurt Dreher
Task Force Agent
FBI Gang Task Force

Sworn and subscribed to before me this 28rd day of May 2008 at Boston, Massachusetts.

_____
LEO T. SOROKIN
UNITED STATES MAGISTRATE JUDGE